**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| ERICA KORRINNE FORRESTER, *as Mother, Natural Guardian, and Next Friend of W.A.L.F., a Minor*, | ) | |
| *Plaintiff*, | ) | Case No. 3:26-cv-333 |
| v. | ) | Judge Atchley |
| | ) | Magistrate Judge Poplin |
| CRUCIBLE ETN, LLC, *et al.*, | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Crucible ETN, LLC's ("Crucible") Motion to Dismiss [Doc. 16] and Plaintiff's Conditional Motion for Leave to File First Amended Complaint [Doc. 22]. For the reasons explained below, Crucible's Motion to Dismiss [Doc. 16] will be **GRANTED**, Plaintiff's Conditional Motion for Leave to File First Amended Complaint [Doc. 22] will be **DENIED**, and Crucible will be **DISMISSED** from this action.

## I. BACKGROUND

Crucible, formerly known as Nyrstar Tennessee Mines – Strawberry Plains, LLC, is the operator of the Young Mine, an underground lead-zinc ore mine located in New Market, Tennessee. [Doc. 10 at ¶ 4]. To extract lead-zinc ore from the mine, Crucible utilizes irregular room-and-pillar and bulk stope mining methods, whereby slices of orebody are blasted and collected at the bottom of a stope. [*Id.* at ¶¶ 8–9]. Load Haul Dump ("LHD") loaders load the blasted ore into haul trucks to transport them to a mill hole where the ore will eventually be carried to the surface via a skip hoist. [*Id.*]. Bulk stope mining inherently creates hazardous ground conditions in and around the active stope, and when ore pillars within a stope a removed, the unsupported roof above the stope is known for risk of collapse. [*Id.* at ¶ 9].

According to the Complaint, on the evening of July 11, 2025, Alan Leon Whitaker began his night shift at the Young Mine and was assigned to perform loading operations in area 2025, an active bulk stope area. [*Id.* at ¶ 14]. The remote control for his assigned loader was missing, so he temporarily performed other duties while a supervisor searched for it. [*Id.* at ¶¶ 14–15]. Mr. Whitaker eventually returned to area 2025 where he was seen at approximately 2:00 a.m. remotely operating a different loader, the No. 8 Sandvik LH517. [*Id.* at ¶ 15]. Plaintiff alleges that Crucible had knowledge that, among other things, the ground conditions in area 2025 were hazardous due to the removal of various ore pillars. [*Id.*]. At approximately 4:15 a.m. on July 12, the roof of the stope collapsed onto the LHD loader that Mr. Whitaker was operating. [*Id.* at ¶ 16]. Rescue personnel recovered Mr. Whitaker the following day, and he was pronounced dead from multiple crash injuries. [*Id.* at ¶ 17]. An investigation by the Mine Safety and Health Administration ("MSHA") determined that the accident occurred because Crucible had failed to take down or support the hazardous ground conditions before work and travel occurred in the affected area and the LHD loader was operated manually 68 feet beyond the established safety line. [*Id.* at ¶ 18]. The MSHA further noted that the Sandvik LH517 was not manufactured with a Falling Object Protective Structure (FOPS) or Roll-Over Protective Structure (ROPS). [*Id.*].

The Complaint further alleges that Mr. Whitaker's death resulted from a longstanding pattern of prioritizing production over worker safety at the Young Mine. [*Id.* at ¶¶ 19–22]. According to Plaintiff, Crucible management imposed aggressive production quotas, threatened employees with termination or reduced pay if targets were not met, and disregarded safety objections to its mining and blasting practices by its own mine managers. [*Id.*]. Plaintiff also alleges that Crucible had prior notice of the dangers associated with its bulk-stope operations based on the 22 MSHA enforcement actions against it in 2025 and an earlier incident in which an LHD

loader was trapped beneath a rock for several months. [*Id.* at ¶¶ 20–22]. Plaintiff alleges that these circumstances reflect that Crucible "made a deliberate determination to sacrifice miner safety to production" and that through the "combined effect[s] of [its] deliberate decisions," Crucible "made a deliberate determination . . . to expose miners, including Mr. Whitaker, to injury in service of production." [*Id.* at ¶ 29–31].

On July 10, 2026, Plaintiff Erica Korrinne Forrester initiated this action on behalf of her biological son W.A.L.F. [Doc. 1]. W.A.L.F. is the biological son of Alan Leon Whitaker, who was born approximately four months and nine days after the death of his father. [Doc. 10 at ¶ 1]. In her Complaint, Plaintiff asserts a single wrongful death claim against Crucible. Now, Crucible seeks to dismiss Plaintiff's sole claim against it on grounds that it is barred by the exclusivity clause of the Tennessee Workers' Compensation Law ("TWCL"). [Doc. 16]. Plaintiff has responded in opposition [Doc. 21], and Crucible has replied [Doc. 25]. Although Plaintiff maintains that the Complaint as filed states a valid claim against Crucible, she moves in the alternative for leave to file an amended complaint if the Court concludes otherwise. [Doc. 22]. Crucible responded in opposition [Doc. 26], and Plaintiff did not file a reply. These matters are now ripe for the Court's review.

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017) (internal quotations omitted). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and

conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

As to the Motion for Leave to Amend, Federal Rule of Civil Procedure 15(a)(2) requires leave to amend be freely given "when justice so requires." This analysis requires the Court to consider undue delay in filing, lack of notice to the opposing party, bad faith by the movant, failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and the futility of the amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "Amendment to a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F. 3d 803, 817 (6th Cir. 2005).

## III. ANALYSIS

### a. Motion to Dismiss

"The TWCL 'provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury.'" *Maggard v. Nyrstar Tenn. Mines, Strawberry Plains, LLC*, 634 F. Supp. 3d 454, 459–60 (E.D. Tenn. Oct. 6, 2022) (quoting *Valencia v. Freeland & Lemm Constr. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003)). Here, the parties do not dispute that Mr. Whitaker was injured during the course and scope of his employment. [Doc. 17 at 5; Doc. 21 at 3]. Rather, Plaintiff maintains that the TWCL's exclusivity provision does not apply because Crucible committed an intentional tort against Mr. Whitaker.

While it is true that Tennessee courts "have created an exception to the exclusivity provision for intentional torts committed by an employer against an employee," *Valencia*, 108 S.W.3d at 242, it is a "narrow one." *Henry v. CMBB, LLC*, 797 Fed. Appx. 258, 261 (6th Cir. 2020). To prevail under the intentional-tort exception, a plaintiff must "allege facts showing that the employer actually intended to injury the employee." *Valencia*, 108 S.W.3d at 243. It is not enough to show that the tortfeasor believed "that the consequences [were] substantially certain to result from [its] actions" like in the traditional tort context. *Henry*, 797 Fed. Appx. at 261 (cleaned up). Instead, "factual allegations must create a reasonable inference of a deliberate determination on the part of the employer to cause injury combined with the undertaking of some means appropriate to that purpose." *Maggard*, 634 F. Supp. 3d at 460 (cleaned up). Consistent with that requirement, courts have held that "'knowingly permitting a hazardous work condition to exist, knowingly ordering a claimant to perform an extremely dangerous job, [and] willfully and unlawfully violating a safety statute' is conduct that 'falls short' of actual intent." *Id.* (quoting *King v. Ross Coal Co., Inc.*, 684 S.W.2d 617, 619 (Tenn. Ct. App. 1984)).

Plaintiff argues that the intentional-tort exception should apply here because the Complaint includes facts showing that Crucible "'made a deliberate determination to sacrifice miner safety to production,' evidenced by four categories of affirmative conduct:" (1) "forced" bulk shot blasting over managers' safety objections; (2) continued production loading in area 2025 with actual knowledge that the roof was unsupported and without taking the ground down; (3) provided a fleet of unprotected loaders and, "on the night of Mr. Whitaker's death failed even to provide the functioning remote control that its own policy [required]"; and (4) "coerced continued production through repeated threats of termination, layoffs, and pay cuts." [Doc. 21 at 5; Doc. 10 at ¶ 29(a)–(d)]. Crucible asserts that these allegations are not sufficient to create a reasonable inference of an actual intention to injure Mr. Whitaker. The Court agrees with Crucible.

Taken together, Plaintiff's allegations support a reasonable inference that Crucible acted with gross negligence, if not recklessness. But as Tennessee courts have recognized, "'[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully and unlawfully violating a safety statute, this still falls short of the kind of *actual intention* to injure that robs the injury of accidental character.'" *Mize v. Conagra*, Inc., 734 S.W.2d 334, 336 (Tenn. Ct. App. 1987) (quoting *King*, 684 S.W.2d at 619) (emphasis in original). This sort of conduct is precisely what Plaintiff alleges—namely that Crucible knowingly ordered Mr. Whitaker to work in a dangerous area created by its willful violations of numerous safety statutes. [Doc. 10 at ¶¶ 29–31]. Courts have consistently dismissed claims against employers based on similar facts to the ones alleged here. *See generally Henry*, 797 Fed. Appx. at 262 (employer's failure to fix a known defective safety mechanism deemed not intentional); *Maggard*, 634 F. Supp. 3d at 459–61 (dismissed claim against employer who knowingly assigned the employee defective equipment and to an area with hazardous work conditions); *Valencia*, 108 S.W.3d at 243 (affirming dismissal of wrongful death claim where a construction trench in which the employee was working collapsed and employer had twice been cited for violating safety regulations related to the work area); *King*, 684 S.W.2d at 620 (facts showing that the employer continued strip mining over repeated warnings about a dangerous highwall not enough for the intentional-tort exception).

Although Plaintiff relies on *Amos v. Bodycote Thermal Processing*, No. 2:15-CV-185, 2016 U.S. Dist. LEXIS 201169 (E.D. Tenn May 31, 2016), to argue that Crucible acted with an actual intent to injure, that decision ultimately demonstrates why her position fails. In *Amos*, the plaintiff brought an intentional tort claim, along with several retaliation claims, after suffering injuries in a work-related explosion. 2016 U.S. Dist. LEXIS 201169, at *9–10. This Court

permitted the intentional tort claim to proceed based on two particularly significant allegations: the plaintiff had repeatedly complained that employees were disabling safety devices, and the defendant had intentionally disabled the very device the plaintiff was using when he was injured. *Id.* at 10. Taken together, those allegations supported a plausible inference that the defendant had "an actual intent to injure the plaintiff possibly in retaliation for the complaints or to stop future complaints." *Id.* at 11.

Nothing comparable is alleged here. Plaintiff does not allege that Crucible deliberately disabled a safety device intending to expose him to the danger that ultimately caused his death. Nor does Plaintiff allege that Mr. Whitaker had personally complained about Crucible's mining practices or that his supervisors harbored any particular "animosity" toward him for doing so.[1] *Maggard*, 634 F. Supp. 3d at 461. Instead, Plaintiff alleges that Crucible maintained unsafe mining practices and pressured its workforce to meet production targets, even when doing so meant exposing miners to dangerous conditions. Those allegations may support an inference of serious safety violations, gross negligence, or even recklessness. But they do not support the further inference that Crucible actually intended to injure Mr. Whitaker. In cases like this, an employee's injury often results from an employer's decision to subordinate safety to production demands—to

[1] Plaintiff is correct that *Amos* does not necessarily require personal animosity to support an intentional-tort claim in this context. But there still must be some factual allegation from which the Court can plausibly infer that the employer acted with a deliberate intent to injury. *Maggard*, 634 F. Supp. 3d at 460. The mere fact that employees complain about safety violations and an injury later occurs—even when the employer pressures them to work in a dangerous environment—does not bridge that gap. "[I]t takes more than a mere inference of tortious intent to convert the defendant's negligence into an intentional tort." *King*, 684 S.W.2d at 620. In *Amos*, that additional circumstance was the defendant's intentional disabling of the very safety device the plaintiff was using, coupled with the plaintiff's prior safety complaints. 2016 U.S. Dist. LEXIS 201169, at *9–10. Here, Plaintiff alleges no comparable conduct connecting Crucible's alleged safety violations to an actual intent to injury Mr. Whitaker.

cut corners, disregard safety requirements, and keep workers moving to meet production quotas.[2] It is far too tenuous of a connection to infer that Crucible wanted to injure Mr. Whitaker, alongside all of its employees for that matter, by the fact that some employees had objected to its mining practices. To be sure, these allegations, if true, raise serious concerns regarding Crucible's safety practices and priorities. But they do not place this case among the rare circumstances in which the intentional-tort exception applies.

Accordingly, the Court finds that the allegations in the Complaint do not support a plausible inference that Crucible intended to injure Mr. Whitaker. Plaintiff's negligence claim against Crucible is therefore barred under the exclusivity provision of the TWCL.

**b. Motion to Amend**

Plaintiff also argues that dismissal of her claim against Crucible is unwarranted because she should be granted leave to amend her Complaint. [Doc. 21 at 14–16; Doc. 22]. She explains among other things, that her proposed amended complaint "restates Count I [ ] with the organization and specificity Crucible's Motion contends is lacking." [Doc. 22 at 2]. Specifically, Plaintiff asserts that the proposed pleading shows a "deliberate determination to cause injury" and "the undertaking of means appropriate to that purpose," "evidenced by senior management's creation of the hazard through a blasting practice forced upon the mine's own managers over their safety objections, its refusal to control that hazard in the face of a federal abatement order, and its

[2] Plaintiff argues that the facts of this case are different because Crucible created the dangerous condition rather than simply ignore it. That distinction, however, holds little weight considering that multiple courts have dismissed similar claims where the employer had created the injury causing condition. *See Valencia*, 108 S.W.3d at 241 (intentional-tort exception did not apply where employer, after two safety citations, continued to construct dangerous trenches that ultimately collapsed and killed an employee); *King*, 684 S.W.2d at 620 (the fact that the employer's mining practices created a dangerous highwall not enough for intention-tort exception).

coercion of the workforce by threats carried out through firings." [*Id.* at 2 (citing Doc. 22-1 at ¶¶ 29–31)].

The Court finds that, even considering Plaintiff's additional allegations, permitting leave to amend would be futile. "A proposed amendment is futile if the complaint, as amended, would not withstand a motion to dismiss." *United Naturals, Inc. v. LXR Biotech, LLC*, No. 15-14299, 2016 U.S. Dist. LEXIS 32181, at *3 (E.D. Mich. Mar. 14, 2016) (citing *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 382–83 (6th Cir.1993)). Here, Plaintiff's wrongful death claim against Crucible was deficient because it lacked the factual allegations necessary to permit the Court to draw the reasonable inference that Crucible had an actual intention to injure Mr. Whitaker. Plaintiff's proposed amended complaint, however, does not add any additional facts to support such an inference. Indeed, Plaintiff represents that the proposed amended complaint "pleads the *same facts* with sharper focus on the elements" of the intentional tort exception. [*Id.* at 4 (emphasis added)]. The new allegations simply tell the same story as before: that Crucible knowingly ordered Mr. Whitaker to work in a dangerous area created by its willful violations of numerous safety statutes. While the proposed amended complaint may add greater "organization and specificity" to Plaintiff's wrongful death claim, it "fails to cure the aforementioned legal and pleading deficiencies, and therefore, is not sufficient to withstand a Rule 12(b)(6) motion to dismiss." *Hess v. City of Huber Heights*, No. 3:13-cv-312, 2014 U.S. Dist. LEXIS 92370, at *33 (S.D. Ohio July 8, 2014) (cleaned up).[3]

---

[3] Plaintiff's additional argument that discovery would add further support to her wrongful death claim does not save it from dismissal. "[A] plaintiff cannot use discovery to bridge the gap between a deficient pleading and the possibility that a claim might survive upon further investigation." *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1041 (6th Cir. 2024) (internal citation omitted). "Put simply, a plaintiff is not entitled to discovery to determine whether a claim can survive past the pleading stage." *Id.* (cleaned up).

Accordingly, because Plaintiff's proposed amended complaint would be futile, her Motion to Amend [Doc. 22] is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Crucible's Motion to Dismiss [Doc. 16] is **GRANTED** and Plaintiff's Conditional Motion for Leave to File First Amended Complaint [Doc. 22] is **DENIED**. Crucible ETN, LLC is hereby **DISMISSED** from this action.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**